IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KHALIF ABDUL MATEEN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:19cv00620 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| SGT. COLLINS, | ) By:  Hon. Thomas T. Cullen |
| | )       United States District Judge |
| Defendant. | ) |

Plaintiff Khalif Abdul Mateen, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, against Defendant Sgt. Collins, alleging that Collins retaliated against him for filing complaints about prison conditions and alleged sexual harassment. Collins now moves for summary judgment. For the reasons stated below, the court will grant Collins's motion for summary judgment and dismiss Mateen's retaliation claim against Collins with prejudice.

I.

The court is presented with two sets of facts—one drawn from Mateen's verified complaint and supporting exhibits, and the other based on Collins's affidavit and supporting exhibits. The facts contained in each are briefly summarized below[1] and, for purposes of summary judgment, all reasonable inferences are drawn in Mateen's favor.

---

[1] The court previously summarized the facts of this case, as alleged by Mateen, in a Memorandum Opinion on various defendants' Motion to Dismiss. (*See* Mem. Op. pgs. 1–4, Nov. 10, 2020 [ECF No. 29].) Here, the court summarizes those facts that pertain specifically to Collins.

Mateen is an inmate at Wallens Ridge State Prison ("WRSP"). Relevant to this action, he filed internal complaints about the need for safety ladders to be installed on bunk beds and for water jugs to be placed in the outside recreation areas. In addition, Mateen complained that a female guard, Correctional Officer Miller, sexually harassed him. (Am. Compl. 1 [ECF No. 4].)

Mateen's complaint against Miller stemmed from an alleged incident in which she "shook down" Mateen's cell and "told [him] that she would continue to shake [his] cell down on her break because [he] had denied her sexual advances" and because he had not helped her to "get[] rid of" an ex-cellmate of his with whom she had an ongoing dispute. (*Id.*) On April 30, 2018, Mateen filed an Informal Complaint alleging sexual harassment by Miller. (Am. Compl. Ex. 7 [ECF No. 4-1].)[2] Prison officials marked the complaint "received" on May 3, 2018. (*Id.*) Mateen also alleges that he called the Prison Rape Elimination Act ("PREA")[3] hotline to report Miller. (Am. Compl. 1.)

Mateen alleges that Collins subsequently asked him to withdraw his complaints. (*Id.*) When Mateen refused, Collins allegedly responded that Mateen's complaint about Miller "seem[ed] gay" and said that Mateen should be thankful a female was "hitting on" him. (*Id.*) Mateen "responded sarcastically saying to [] Collins that [he] didn't find fat women attractive." (*Id.*) Mateen alleges that Collins "flew into a rage" and escorted Mateen to his cell, assisted by

---

[2] Mateen did not label the exhibits attached to his Amended Complaint. (*See generally* Am. Compl. & Exs. [ECF Nos. 4, 4-1].) Accordingly, the court refers to Mateen's exhibits by the order in which they are attached to his Amended Complaint. For example, the first exhibit attached to Mateen's Amended Complaint is referred to herein as "Ex. 1."

[3] PREA is codified at 42 U.S.C. §§ 15601–15609.

Correctional Officer Rutherford. Collins searched Mateen's cell with two other correctional officers. (*See* Def.'s Br. in Supp. of Mot. for Summ. J. Ex. 2 [ECF No. 35-1].)[4] Mateen specifically alleges that Collins searched his cell in retaliation for his refusal to drop his complaints. (Am. Compl. 1.) In addition, Mateen claims that the searches were a "set up" so that the prison guards could place him in segregation. (*Id.* at 2.) Officials also charged his cellmate, who also was placed in segregation. (*Id.*)

For his part, Collins asserts in his affidavit that he is a Building Sergeant and that his job "includes talking to offenders about their concerns and attempting to resolve them if possible." (Aff. of S. Collins ¶ 4, Jan. 5, 2021 [ECF No. 35-1].) He does "not specifically recall" Mateen, but he acknowledges that several offenders complained about the lack of water jugs in the recreation yard. He also notes that every cell has a "table that the offenders can use to climb to the top bunk" in lieu of using a ladder. (*Id.*) Although Collins does "not recall Mateen," he acknowledges that "it is possible that [he] spoke with [Mateen] about the water coolers and the bunk ladders." (*Id.*) He also states that inmates' cells are searched at "random" and upon suspicion of contraband, and he reports that Virginia Department of Corrections records reveal that Mateen's cell was searched on April 30, 2018, and on May 8, 2018. (*Id.* ¶ 5.)

According to the Disciplinary Offense Report from the April 30 search—the day Mateen alleges he made an informal complaint about Miller, but before the prison received it—Correctional Officer Stallard was making rounds and "smelled a strong odor of 'mash'

---

[4] Collins did not label the exhibits attached to his brief. (*See generally* Def.'s Br. in Supp. of Mot. for Summ. J. & Exs. [ECF Nos. 35, 35-1].) Accordingly, the court refers to Collins's exhibits by the order in which they are attached to his brief. For example, the first exhibit attached to Collins's brief—his affidavit—is referred to herein as "Ex. 1."

emitting from" Mateen's cell. (*Id.* Ex. A.) Stallard "instructed Officer Miller and Officer Sturgill to assist" in searching the cell. (*Id.*) "During the search approximately 3 gallons of intoxicants were found," and Mateen claimed ownership of them. (*Id.*) Mateen pled guilty to the charge of possession of intoxicants and the hearing officer imposed a $10 fine as a penalty. Mateen had been given a "penalty offer" of $12, but he apparently declined. (*See id.*)

The Disciplinary Offense Report for the May 8 search—which took place five days after Mateen's informal complaint was received—does not explain why Mateen's cell was searched, but does state that Collins, Officer Nixon, and Officer Rutherford found "2 bags of intoxicants and several bags of apple juice." (*Id.*) Mateen and his cell mate both claimed possession of the offending items. This time, however, Mateen accepted a penalty offer of 30 days in disciplinary segregation. (*See id.*)

Collins denies Mateen's accusation of retaliation. (*Id.* ¶ 6.) He states that he is "not aware of any [PREA] claims filed by Mateen against Miller, nor [does he] have any knowledge of any alleged sexual harassment of Mateen by Officer Miller." (*Id.*) He does "not recall a conversation with Mateen concerning Miller and [he] did not 'fly into a rage' as Mateen alleges." (*Id.*) Finally, Collins states that he never "ask[ed] Mateen to withdraw any of his grievances or complaints regarding Miller or any other issue," and that he has never retaliated against "any offender for exercising his right to write grievances and complaints." (*Id.* ¶ 7.) Collins now moves for summary judgment.

## II.

The Federal Rules of Civil Procedure provide that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

- 4 -

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

### III.

Prisoners, like Mateen, have a "First Amendment right to be free from retaliation for filing grievances." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). On the other hand, claims of retaliation against prison inmates must be examined with care because many actions by prison officials are "by definition 'retaliatory' in the sense that [they are in] respon[se] to prisoner misconduct" or other concerning behaviors. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate three elements: (1) that he engaged in protected activity, (2) that the defendant took some action that adversely affected the plaintiff, and (3) that there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Martin v. Duffy*, 858 F.3d 239, 249

(4th Cir. 2017) ("*Martin I*"). It is well-established that the filing of a grievance or a lawsuit is protected conduct that satisfies the first element. *See Booker*, 855 F.3d at 541.

The second element is satisfied if the defendant's action "would likely deter prisoners of ordinary firmness from exercising their . . . rights." *Id.* at 537 (quoting *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 45 (4th Cir. 2014)). Even legitimate disciplinary actions can constitute adverse actions and satisfy the "causation" element. *E.g.*, *Baker v. Clarke*, No. 7:18-cv-00620, 2020 WL 6703436, at *5 (W.D. Va. Nov. 13, 2020) ("[Baker] also alleges that, thereafter, because of disciplinary convictions, officials took away his ability to earn good-conduct time, which the court finds to be an adverse action for purposes of a retaliation claim."); *see also Watson v. Rozum*, 834 F.3d 417, 423 (3rd Cir. 2016) (concluding that a prisoner charged with misconduct "clearly suffered an adverse consequence").

The third element requires a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Martin I*, 858 F.3d at 249. In *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) ("*Martin II*"), the Fourth Circuit applied the burden-shifting standard from *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), to causation in inmates' retaliation claims. Concluding that the burden of showing causation is "best shared," the Fourth Circuit adopted *Mt. Healthy*'s "same-decision test." *Martin II*, 977 F.3d at 299–300. The same-decision test proceeds in two steps. First, an inmate must show "that protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Id.* at 301. If the inmate does so, the burden shifts to the defendant to demonstrate by a preponderance of the evidence that he "would have reached the same

decision . . . in the absence of the protected conduct," *id.* at 299 (quoting *Mt. Healthy*, 429 U.S. at 283).

Here, Collins is entitled to summary judgment on Mateen's retaliation claim. The parties agree that Mateen engaged in protected First Amendment activity by filing prison grievances and informal complaints. Filing prison grievances and informal complaints are protected First Amendment activities, *Booker*, 855 F.3d at 545, and Mateen filed three informal complaints about a week before the allegedly retaliatory cell search. (*See* Am. Compl. Ex. 1 [ECF No. 4-1]; Ex. 4 [ECF No. 4-1]; Ex. 7 [ECF No. 4-1]).

But the court must still grant summary judgment because there is no genuine issue of material fact as to whether Collins took some action in response that adversely affected the plaintiff. In ruling on defendants' motion to dismiss, the court assumed for the purposes of that decision[5] that a cell search alone could be a sufficiently adverse action to satisfy the second element of a retaliation claim. (*See* Mem. Op. pg. 9, Nov. 10, 2020 [ECF No. 29].) At this later juncture, based on a developed factual record, the court finds to the contrary.

An action is sufficiently adverse if it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). "[A] mere cell search" does not meet that standard. *Riddick v. Lt. Penny McCowan*, No. 7:21cv138, 2021 WL 3464933, at *4 (W.D. Va. Aug. 6, 2021). Inmates enjoy no expectation of privacy in their cells, and their cells can be (and often are) searched at random. *Hudson v. Palmer*, 468 U.S. 517, 525–29 (1984). (*Hudson* did not consider

---

[5] The court noted that "Defendants' motion to dismiss does not argue that a cell search . . . is not a sufficient adverse action to support a retaliation claim." (Mem. Op. pg. 9, Nov. 10, 2020 [ECF No. 29].)

whether a search "conducted only to harass" would violate an inmate's constitutional rights. *Id.* at 529–30.) Yet courts within the Fourth Circuit have found that a routine cell search, without more, is not sufficiently adverse to satisfy the second element of a retaliation claim. *See Riddick*, 2021 WL 3464933, at *3 ("[T]he disturbance, or even confiscation of or damage to personal property [during a cell search], without more, does not constitute a sufficiently adverse action so as to satisfy the second element of the retaliation analysis, which requires an action by defendant that 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" (quoting *Constantine*, 411 F.3d at 500)); *Mohammed v. Beaver*, No. 5:18cv165, 2021 WL 1147169, at *9 (W.D.N.C. Mar. 25, 2021) (granting summary judgment on retaliation claims based on repeated cell searches because they constituted "[no] more than *de minimis* inconvenience" and "would not deter a person of ordinary firmness from exercising his First Amendment rights"); *Ballance v. Angelone*, No. CIV.A. 7:01CV 00410, 2002 WL 32074716, at *7 (W.D. Va. May 2, 2002), *aff'd*, 46 F. App'x 223 (4th Cir. 2002) ("A cell shakedown and the alleged confiscation of material, whether or not it was done in response to filing of a lawsuit, is not sufficiently adverse to [the plaintiff] to constitute retaliation.").

While a cell search, by itself, is not sufficiently adverse to satisfy the second element of a retaliation claim, the same may not always be said of a cell search that uncovers contraband and results is a disciplinary charge. Although the initial cell search would be retaliatory but not adverse, uncovering contraband and levying a charge would not have been possible absent the original retaliatory—but non-adverse—action. In that instance, the court assumes that a defendant likely *would* need to make a showing that the institution would have reached the

same decision (regarding a constitutionally significant punishment) absent a retaliatory motive. *See Martin II*, 997 F.3d at 302.

But Mateen's acceptance of the "penalty offer" stands as a bar to any claim that he was charged and placed in segregation as retaliation. Mateen *agreed* to accept 30 days in segregation, and therefore he cannot show that the search of his cell—which the court will assume was retaliatory for purposes of this analysis—resulted in a constitutionally significant hardship. Rather, it was his decision to accept the penalty offer that caused his placement in segregation.

Moreover, as evidenced by his lower penalty following the April 30 search, the court cannot assume that Mateen would have received the same or a higher penalty had he (1) pleaded not guilty or (2) pleaded guilty but refused the penalty offer. Because Mateen's decisions to admit he possessed intoxicants and accept 30 days in segregation were the "but-for" causes of his placement in segregation, he cannot show that any action by Collins adversely affected him. If he cannot make that showing, then he cannot succeed on his claim. Accordingly, the court will grant Collins's motion for summary judgment.

**IV.**

For the foregoing reasons, the court will defendant Collins's motion for summary judgment and will dismiss Mateen's retaliation claim against Collins with prejudice.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 27th day of September, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE